IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:17-cr-187 |
| WILLIAM PRIGMORE, | | JUDGE WALTER H. RICE |
| Defendant. | : | |

---

DECISION AND ENTRY OVERRULING MOTION TO SUPPRESS PHYSICAL EVIDENCE AND ANY CONTEMPORANEOUSLY MADE STATEMENTS (DOC. #43 AS SUPPLEMENTED BY DOC. #53), AND SUPPLEMENTAL MOTION TO SUPPRESS PHYSICAL EVIDENCE AND ANY CONTEMPORANEOUSLY MADE STATEMENTS TO NOW INCLUDE THE SEARCH WARRANT EXECUTED ON 341 STELTON ROAD, APT. 608 (DOC. #62)

---

Defendant William Prigmore was originally indicted on one count of being a felon in possession of ammunition. Doc. #21. A Superseding Indictment charges him with one count of being a felon in possession of a firearm, and two counts of being a felon in possession of ammunition, all in violation of 18 U.S.C. § 922(g)(1). Doc. #60.

This matter is currently before the Court on Defendant's Motion to Suppress Physical Evidence and Any Contemporaneously Made Statements, Doc. #43, as supplemented by Doc. #53, and a Supplemental Motion to Suppress Physical Evidence and Any Contemporaneously Made Statements to Now Include the

Search Warrant Executed on 341 Stelton Road, Apt. 608, Doc. #62. The Court held an evidentiary hearing on January 3, 2019, the transcript of which is filed at Doc. #57.

I.  **Background and Procedural History**

On the evening of October 21, 2017, Xenia police officer Chris Reed was dispatched to the Deer Creek apartment complex on a complaint of drug activity. The unidentified caller indicated that a sport utility vehicle ("SUV") was double parked and that someone in the back seat was "shooting up." Doc. #57, PageID#201. When he arrived at the apartment complex, Officer Reed found a Hyundai Santa Fe straddling two parking spaces, one of which was a handicap spot. As he exited his patrol car and approached the SUV, he noticed that it had no placard or license plate indicating that the driver had permission to park in a handicap spot. *Id.* at PageID##202-03.

Defendant William Prigmore opened the rear passenger door of the SUV and began to step out. Not knowing what Defendant's intentions were, Officer Reed instructed him to stay in the vehicle. Defendant complied with the order but left the car door open. Officer Reed noticed what appeared to be a handgun protruding from a pocket in that car door. For safety reasons, Reed drew his firearm and ordered the three occupants of the SUV to raise their hands. *Id.* at PageID##204-06.

2

By this time, Sergeant Cvitkovich had arrived on the scene. Reed removed the handgun from the door pocket and handed it to him. Neither officer inspected the gun to determine whether it was real. Reed testified that it was not safe at that point in time to do so because there were still three people in the car, and it was unclear whether they had other weapons. Because Defendant was closest to door pocket where the gun was found, Officer Reed asked him to step out of the SUV. Reed handcuffed him and patted him down. Defendant then told him that the gun was not real, but the officers took no steps at that point to confirm his statement. Reed testified that, because BB guns look so realistic, it is not always easy to distinguish them from real guns. *Id.* at PageID##208, 210-11, 221-22.

When Officer Reed returned to the SUV, he saw another gun in plain view on the back seat where Defendant had been sitting. In the course of securing this weapon, Reed determined that it was real. *Id.* at PageID##212-13. This 9 mm handgun was loaded with seven rounds in the magazine and one in the chamber. Doc. #62-1, PageID#288.

Defendant was taken into custody, along with the driver and the other back seat passenger, who were found with drug paraphernalia, heroin and Gabapentin. The driver indicated that they had just come from apartments on 341 Stelton Road in Xenia. Defendant was released on bond the next day. *Id.* at PageID#289.

On October 23, 2017, FBI agents obtained a search warrant for two residences and two vehicles. Doc. #62-1, PageID#278. The warrant application indicated that the search was related to violations of 21 U.S.C. § 846, conspiracy

3

to distribute and to possess with intent to distribute controlled substances. The application was supported by the Affidavit of FBI Agent Dennis Eng, who detailed a lengthy history of drug trafficking activity by Defendant and his associates. One of the residences to be searched was 341 Stelton Road, Apartment 608, in Xenia. Property to be seized included "[f]irearms and ammunition." *Id.* at PageID#291. During the search, a box of 9 mm ammunition was recovered from that apartment, along with mail addressed to Defendant. *Id.* at PageID#298.

On the same date, FBI agents obtained an arrest warrant for Defendant for an alleged violation of 18 U.S.C. § 922(g)(1), being a felon in possession of ammunition. They arrested him that evening at the Deer Creek apartment complex. Based on his eyes, his facial expressions and his "scattered and incoherent" demeanor, the agents feared that he was under the influence of a controlled substance. They believed he "might not have understood anything if we did try to attempt to question him." They therefore refrained from questioning him. They did not read him his *Miranda* rights. Doc. #57, PageID##230-34, 238-39.

FBA agents Dennis Eng and Patrick Gragan transported Defendant to the Montgomery County Jail, approximately 25 minutes away. Defendant walked unassisted into the jail. During the booking process, Defendant was cooperative and was able to confirm biographical information such as his name, social security number and date of birth. Gragan testified that Defendant appeared to be more coherent than he had been at the apartment complex. The officers did not

question Defendant concerning any of the allegations against him. *Id.* at PageID##239-43. Nevertheless, during the booking process, Defendant spontaneously stated "that gun was mine." *Id.* at PageID#243.

Defendant was indicted on November 14, 2017, on one count of being a felon in possession of ammunition. He then filed a Motion to Suppress Physical Evidence and Any Contemporaneously Made Statements, Doc. #43. He later filed a Supplement to that motion, Doc. #53. Before those motions were fully briefed, the Government filed a Superseding Indictment, charging Defendant with one count of being a felon in possession of a firearm and two counts of being a felon in possession of ammunition. Doc. #60. After these new charges were filed, Defendant filed a Supplemental Motion to Suppress Physical Evidence and Any Contemporaneously Made Statement to Now Include the Search Warrant Executed on 341 Stelton Road, Apt. 608, Doc. #62. These motions are now fully briefed.

## II. Analysis

The Fourth Amendment protects the right of individuals to be free from unreasonable searches and seizures. U.S. Cont. amend. IV. A warrant is required unless one of several exceptions applies. *Katz v. United States*, 389 U.S. 347, 357 (1967). Evidence obtained in violation of the Fourth Amendment may be inadmissible at trial. *Herring v. United States*, 555 U.S. 135, 139 (2009).

Alleging Fourth Amendment violations, Defendant asks the Court to suppress evidence of the firearm found in the back seat of the SUV and his

5

subsequent admission that the gun belonged to him. He also asks the Court to suppress evidence of the ammunition that was seized during the search of the Stelton Road apartment.

### A. Firearm

Defendant first challenges the warrantless search of the SUV. He argues that, at the time that Officer Reed ordered him out of the vehicle and placed him in handcuffs, Reed had no reasonable suspicion that he had committed a crime. Defendant was not the driver of the SUV that was illegally parked, and there was no reliable evidence that he was the individual who was "shooting up" in the back seat. Quoting *Florida v. J.L.*, 529 U.S. 266 (2000), Defendant argues that the anonymous tip relayed to the dispatcher "lacked sufficient indicia of reliability to provide reasonable suspicion" to detain him. Officer Reed removed Defendant from the SUV after spotting what appeared to be a handgun in the pocket of the car door. Defendant argues, however, that, because this was actually a BB gun, his alleged possession of it was not illegal.

In short, Defendant maintains that his seizure was unconstitutional because Officer Reed had no legal basis to remove him from the SUV. Had Defendant not been ordered to step from the vehicle, Officer Reed would not have discovered the 9 mm handgun in the back seat.

The Court rejects these arguments. Given that the SUV was illegally parked in a handicap spot, Officer Reed had probable cause to believe that a parking violation had occurred. He therefore had authority to detain the driver and the

passengers to investigate that violation. *United States v. McDaniel*, 371 F. App'x 617, 620 (6th Cir. 2010). Defendant acknowledges that he attempted to walk away as Officer Reed approached the SUV, and that this could be suggestive of wrongdoing. Officer Reed properly ordered him to return to the vehicle. *Rogala v. District of Columbia*, 161 F.3d 44, 53 (D.C. Cir. 1998) ("a police officer has the power to reasonably control the situation by requiring a passenger to remain *in* a vehicle during a traffic stop, particularly where . . . the officer is alone and feels threatened.").

When Officer Reed observed what appeared to be a handgun in the pocket of Defendant's car door, he reasonably believed that Defendant posed an immediate danger. He was, therefore, justified in removing him from the car and handcuffing him. *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814–15 (6th Cir. 1999) ("when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers.'"). It is irrelevant that the "handgun" in the door pocket was actually a BB gun. As Reed testified, at first glance, BB guns are often indistinguishable from real guns. As he explained, he could not take the time to closely examine the gun at that point because there were two other people in the car and it was not clear whether they had other weapons. Ordering Defendant from the vehicle was a reasonably necessary precaution.

After Defendant was removed from the vehicle, Officer Reed saw the 9 mm handgun, in plain view, on the back seat where Defendant had been sitting. Ohio Rev. Code § 2923.16(B)-(C)(1)-(4) prohibits the carrying of an unsecured firearm in the passenger compartment of a vehicle. "Under the plain-view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (internal quotation omitted). Given that all of these requirements were met, Officer Reed's seizure of the 9 mm handgun from the back seat of the SUV did not violate the Fourth Amendment. Accordingly, the Court overrules Defendant's motion to suppress this evidence.

### B. Statement

Defendant also moves to suppress the statement he allegedly made during the booking process at the jail, indicating "that gun was mine." The Sixth Circuit has noted that:

> Statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been appri[s]ed of the constitutional right against self-incrimination and has validly waived this right. *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On the other hand, "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by" the holding in *Miranda*. *Id.* at 478, 86 S.Ct. 1602.

*United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003).

It is undisputed that Defendant was never read his *Miranda* rights prior to admitting that the gun was his. Agents Eng and Gragan both testified that they did not give Defendant any *Miranda* warnings because they never engaged in custodial interrogation. Doc. #57, PageID##234, 239. Defendant notes, however, that, at the hearing, Eng testified that "we did not *continue* to interview just based on his demeanor at the time." Doc. #57, PageID#234 (emphasis added). Defendant argues that this statement implies that the agents may have asked him *some* questions. There is no evidence to support this conclusion.

Agent Eng testified that they "tried to talk to Mr. Prigmore while he was in the Xenia marked unit cruiser" at the apartment complex, and he "wanted to cooperate" but, because it appeared that he was under the influence of some controlled substance, they "erred on the side of caution not to talk to him at that point." *Id.* at PageID#231. There is no evidence that they asked him any questions about the gun. Given that Defendant was not subject to any custodial interrogation, *Miranda* warnings were not required. The Court finds that Defendant's statement was a volunteered statement that is not barred by the Fifth Amendment. *Cole*, 315 F.3d at 636.

Defendant also argues that the Court should suppress his statement because, given his impaired status, it cannot be deemed voluntary. Citing *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961), he maintains that allowing the Government to use his confession would deprive him of his liberty without due process of law. He notes that, according to the FBI agents, he was so incoherent

9

at the time of his arrest that they decided not to question him. He maintains that it is highly unlikely that just 25 minutes later, at the jail, he was coherent enough to make a "voluntary" confession.

Agents Gragan testified, however, that, when they arrived at the jail, Defendant was able to walk on his own, without stumbling. Doc. #57, PageID#240. Defendant was able to confirm his date of birth and Social Security number without any difficulty. According to Gragan, Defendant did not seem to be as incoherent as he had been back at the apartment complex. He was able to formulate full sentences. *Id.* at PageID#242. Defendant made the statement "out of the blue" and not in response to any questions. *Id.* at PageID#245.

Absent any evidence indicating that Defendant's impaired condition had not so improved from the time of his arrest until the time he made the statement at issue, the Court finds that the Government has satisfied its burden of proving, by a preponderance of the evidence, that the statement was voluntarily made. As the Government notes, drug impairment does not necessarily render a statement involuntary. *See United States v. Montgomery*, 621 F.3d 568, 573-74 (6th Cir. 2010) (collecting cases in which *Miranda* waivers were upheld despite claims of drug impairment); *United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008) ("a defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination."). The Court concludes that Defendant was not so impaired as to render his statement involuntary. Accordingly, the Court overrules his motion to suppress it.

## C. Search Warrant

Finally, Defendant moves to suppress evidence of the ammunition discovered at the Stelton Road apartment. This ammunition forms the basis of Count Three of the Superseding Indictment. Defendant argues that the search warrant affidavit presented by FBI Agent Dennis Eng to Magistrate Judge Michael Newman was defective in that probable cause to seize the ammunition was lacking.

Eng's Affidavit was presented to obtain an *arrest* warrant for Defendant for an alleged violation of 18 U.S.C. § 922(g)(1), felon in possession of ammunition, and to obtain *search* warrants for two residences and two vehicles. Eng averred that there was "probable cause to believe that evidence, contraband, fruits of a crime, other items illegally possessed as well as property designed for use, intended for use, or used in committing violations of 21 U.S.C. § 846 (conspiracy to distribute and possess with intent to distribute controlled substances) exists and can be found at each of these locations." Doc. #62-1, PageID#281. Defendant acknowledges that Eng's Affidavit is sufficient to support a finding of probable cause that evidence associated with the narcotics offenses might be found in the apartment. The Affidavit contains a lengthy history of the drug trafficking activities of Defendant and his associates.

Defendant argues, however, that Eng's Affidavit is devoid of facts supporting a finding that there was probable cause to believe that evidence could be found at the Stelton Road apartment to support Defendant's alleged violation of

11

18 U.S.C. § 922(g)(1), being a felon in possession of ammunition. The Court disagrees.

As the Government notes, the link between drug trafficking and firearms is well established. The Sixth Circuit has noted that "firearms and ammunition are tools of the drug trafficking trade." *United States v. Paulino*, 935 F.2d 739, 754 (6th Cir. 1991), superseded by statute on other grounds, USSG § 3B1.1. *See also United States v. Stone*, 218 F. App'x 425, 439 (6th Cir. 2007) (recognizing "the relevance of firearms in the execution of drug trafficking conspiracies").

In this case, in addition to describing in great detail evidence of Defendant's involvement in drug trafficking, Agent Eng's Affidavit states:

> Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

Doc. #62-1, PageID#283.

The Affidavit notes that, on October 21, 2017, Defendant was taken into custody after a 9mm handgun was found in the back seat of the SUV where he had been sitting. It further notes that Agent Eng is aware the Defendant has "multiple drug convictions along with weapons under disability." *Id.* at PageID#288. Eng's Affidavit also notes that when the law enforcement officers found the 9 mm handgun in the SUV, the driver of the SUV told law enforcement officers that they had just come from the apartments on 341 Stelton Road. *Id.* at

12

PageID#289. Defendant had been observed at that address on several occasions in the months leading up to the search warrant, and a Cooperating Witness told law enforcement officers that Defendant had taken him to this apartment to show him the drug distribution operation. *Id.* at PageID##286-87.

Based on the foregoing, the Court finds that Eng's Affidavit establishes probable cause to believe that evidence of a violation of 18 U.S.C. § 922(g)(1), a felon in possession of ammunition, would be found at 341 Stelton Road, Apt. 608. The fact that Eng's Affidavit refers only to "firearms" and not to "ammunition" is of little consequence, given that firearms and ammunition go hand-in-hand and one is substantially useless without the other.

Defendant also challenges the inclusion of the broad category of "[f]irearms and ammunition" on the list of "Property to Be Seized," Doc. #62-1, PageID#293. He argues that this violates the Fourth Amendment, which requires search warrants to "particularly describe . . . the things to be seized." U.S. Const., amend. IV. *See also Baranski v. Fifteen Unknown Agents of the Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006) ("The chief purpose of the particularity requirement was to prevent general searches by requiring a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed.").

As the Government notes, however, "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items

sought." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). Had the agents been looking for particular firearms or ammunition that had perhaps been stolen in a home invasion, more specificity might be expected. However, where, as here, the crime at issue makes it illegal for a felon to possess "any firearm or ammunition," 18 U.S.C. § 922(g)(1), the search warrant may be more general in nature. *Id.* at 478. *See also United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001) (upholding search warrant for "any and all firearms" where violation of 18 U.S.C. § 922(g) was alleged), abrogated on other grounds as recognized in *United States v. Evans*, 378 F. App'x 485, 489 n.5 (6th Cir. 2010).

Having concluded that Agent Eng's Affidavit is sufficient to establish probable cause to believe that evidence of a violation of 18 U.S.C. § 922(g)(1) would be found at the Stelton Road apartment, and that the list of property to be seized did not violate the Fourth Amendment's particularity requirement, the Court overrules Defendant's motion to suppress evidence of the ammunition found during the execution of the search warrant.[1]

III. Conclusion

For the reasons set forth above, the Court OVERRULES Defendant's Motion to Suppress Physical Evidence and Any Contemporaneously Made Statements, Doc.

---

[1] Having found that the search warrant is valid, the Court need not address the question of whether the good-faith exception to the warrant requirement, as set forth in *United States v. Leon*, 468 U.S. 897 (1984), applies.

#43, as supplemented by Doc. #53, and Supplemental Motion to Suppress Physical Evidence and Any Contemporaneously Made Statements to Now Include the Search Warrant Executed on 341 Stelton Road, Apt. 608, Doc. #62.

Date: June 7, 2019

*Walter H. Rice*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE